UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
THE UNITED STATES OF AMERICA,

        v.

SVETLANA DALI,

                          Defendant.
------------------------------------------------------------------x

**OPINION AND ORDER**

25-CR-14 (AMD)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Defendant Svetlana Dali is charged with being a stowaway on an aircraft in violation of 18 U.S.C. § 2199. Following a bail hearing, the Court granted the Government's motion to release Defendant subject to multiple strict conditions, including that Defendant be subject to GPS location monitoring, abide by a curfew at an assigned residence, and be restricted in travel. On December 15, 2024, United States Pretrial Services learned that Defendant cut off her GPS location monitoring bracelet and absconded. Following this Court's issuance of an arrest warrant, Defendant was subsequently apprehended by officials and detained following a hearing in the Western District of New York.

For the reasons set forth at the January 15, 2025 detention hearing in the Eastern District of New York, and for the reasons explained below, the Court revokes Defendant's release and enters a permanent order of detention pursuant to 18 U.S.C. § 3148(b), as the Court finds that there is clear and convincing evidence that Defendant violated multiple conditions of her release and that Defendant is unlikely to abide by any condition or combination of conditions of release.

I.      **Factual and Procedural Background**

A criminal complaint in this action was filed on December 5, 2024. *See* Dkt. No. 1; *see also* No. 24-MJ-645 (RML). Defendant, a legal permanent resident of the United States, is charged with being a stowaway on an aircraft, in violation of 18 U.S.C. § 2199. *See* Dkt. No. 1. According to the criminal complaint, "[o]n or about November 26, 2024, [Defendant] snuck onto Delta Airlines flight DL264 at [John F. Kennedy International Airport (JFK)] without a boarding pass and flew as a stowaway to Charles de Gaulle Airport" in Paris, France. *Id*. at 2.[1] Specifically, Defendant arrived at JFK Terminal 4 at approximately 8:13 p.m. on or about November 26, 2024. *Id.* At approximately 8:24 p.m. on the same date, she attempted to pass the Transportation Security Administration (TSA) security checkpoint in Terminal 4. *Id.* Defendant was turned away by a TSA official after she was unable to show a boarding pass. *Id.*

Approximately five minutes later, at 8:29 p.m. on November 26, 2024, Defendant again attempted to pass the same checkpoint by entering through a lane designated for airline employees "masked by a large Air Europa flight crew." *Id.* at 3. Defendant's second attempt was successful, and after she was screened by the TSA along with other ticketed airline passengers, Defendant proceeded to JFK gate B38. *Id.* Defendant then boarded Delta flight number DL264 at approximately 10:03 p.m. on November 26, 2024. *Id.* According to the complaint, "Delta agents, who were busy helping ticketed passengers board, did not stop her or ask her to present a boarding pass before she boarded the plane." *Id.*

Defendant's flight departed JFK at 10:37 p.m. on November 26, 2024. *Id.* Before the plane landed at Charles de Gaulle Airport in Paris, Delta employees asked Defendant to present her boarding pass, which Defendant was unable to provide. *Id.* Realizing that she was an

---

[1] Page citations are to the ECF-stamped pages.

unauthorized passenger, Delta employees notified French law enforcement prior to landing that Defendant was on the plane as a stowaway. *Id.*

When the flight landed at Charles de Gaulle Airport on or about November 27, 2024, French law enforcement authorities met Defendant at the gate. *Id.* After determining that Defendant did not possess a passport or boarding pass, law enforcement detained Defendant before she entered customs. *Id.*

According to the complaint, on December 4, 2024, Defendant flew back to JFK from Charles de Gaulle Airport. *Id.* Upon Defendant's arrival at JFK, law enforcement officials escorted Defendant from the gate to an interview room at the airport, where she purportedly admitted to flying as a stowaway on Delta flight DL264. *Id.* at 3-4. Among other things, the complaint asserts that Defendant conceded "she did not have a plane ticket and that she intentionally evaded TSA security officials and Delta employees so that she could travel without buying one, including by looking for opportunities to circumvent them when she knew they would ask for her boarding pass." *Id.* at 4. When shown images of airport security footage that depicted Defendant bypassing TSA officials and Delta employees who were supposed to check for her boarding pass, Defendant confirmed that the images were of her. *Id.* Defendant also told the law enforcement officials that she knew her conduct was illegal. *Id.*

On December 5, 2024, Defendant was presented before the Court for charges in the Eastern District of New York, where she waived a preliminary hearing. *See* Text Order dated December 5, 2024; Dkt. No. 2.[2] The parties agreed to a temporary one-day order of detention so that Defendant could return to Court on December 6, 2024 with a proposed bail package. *See* Dkt. No. 8 (Transcript).

---

[2] A Russian-language interpreter appeared for Defendant at all court proceedings in this action and in the Western District of New York.

3

On December 6, 2024, a bail hearing was held. *See* Text Order dated December 6, 2024; *see* Dkt. No. 9 (Transcript). The Government did not seek detention, noting that there was "no indication [] that [Defendant is] a danger right now" and that this was a "bailable case," as "there are conditions that can mitigate against a flight risk." Dkt. No. 9 at 12-13. The Government requested GPS location monitoring as part of Defendant's conditions of release, affirming that it would reasonably assure her presence in court. *See id.* at 12-14. Defendant requested that she be released with certain conditions but without GPS location monitoring, as she had no criminal history or record. *See id.* at 7. A friend of Defendant, Mr. Silouan Mathew, appeared at the hearing and offered to provide his residence as the Court-approved residence for Defendant. *See id.* at 23-26.

Consistent with *United States v. Sabhnani*, 493 F.3d 63 (2d Cir. 2007) (Raggi, J.), and in light of the Government's position, the Court ruled in favor of the Government and permitted Defendant to be released subject to multiple conditions. *See Sabhnani*, 493 F.3d at 64 ("The government's ability to identify such conditions [that could adequately assure defendants' presence at trial] and the defendants' willingness to accede to them preclude a conclusion in this case that no conditions of release would reasonably assure the defendants' presence at trial"). Defendant was required to abide by the following conditions, as set forth in the Order Setting Conditions of Release:

> (1) The defendant must appear in court as required and surrender as directed for service of any sentence imposed.
> (2) The defendant must not commit a federal, state or local crime while on release.
> (3) The defendant must cooperate in the collection of DNA sample if it is authorized by 34 U.S.C. § 40702.
> (4) The defendant must advise the Court in writing before making any change in residence or telephone number.
> (5) The defendant must not possess a firearm, destructive device or other dangerous weapon.

4

(6) The defendant must not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner. The Court noted that marijuana is still prohibited under federal law.

(7) [T]he defendant must also:

    (a) submit to pretrial supervision and report to Pretrial Services as directed. The defendant is subject to random home contacts and verification of employment as deemed appropriate to monitor compliance with the conditions of release. The defendant shall notify Pretrial Services as soon as possible of any arrests.

    (b) surrender any passport to Pretrial Services and not obtain a passport or any international travel document.

    (c) not leave the Eastern District of Pennsylvania (Philadelphia), the Southern District of New York, or the Eastern District of New York, except for travel to and from court.

    (d) not have any contact with any co-defendants, victims, or witnesses except in the presence of counsel.

    (e) maintain residence at a location approved by Pretrial Services.

    (f) undergo evaluation and treatment for mental health problems, as directed by Pretrial Services.

    (g) be subject to a curfew as directed by Pretrial Services.

    (h) be subject to GPS location monitoring.

    (i) not be permitted to enter any airports.

*See* Order Setting Conditions of Release, Dkt. No. 5; Text Order dated December 6, 2024.

Defendant signed the Order Setting the Conditions of Release and acknowledged that she was aware of such conditions. *See* Dkt. No. 5 at 2. As set forth in the Order, Defendant acknowledged that "violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for [her] arrest, a revocation of [her] release, and order of detention, [] and a prosecution for contempt of court and could result in imprisonment, a fine, or both." *Id*. The Court informed Defendant that if she failed to appear in Court as required or if she violated any of the conditions of her release, she "may then be held without bail until [] trial." Dkt. No. 9 at 33.

Defendant verbally acknowledged that she understood the penalties for violating the conditions of her release. *Id.* at 35 ("Court: Do you understand the penalties for a violation of any condition of your release and your failure to appear? THE DEFENDANT: I do. Fine.").

On the morning of December 15, 2024, a U.S. Pretrial Services Officer from the Eastern District of Pennsylvania contacted a U.S. Pretrial Services Officer from the Eastern District of New York and advised that Defendant had removed her GPS location monitoring bracelet and that her whereabouts were unknown. Contact was made with Defendant's roommate, Mr. Mathew, who sent a photograph of the location monitoring bracelet on the floor of the residence in which Defendant had been residing.

The Court immediately granted Pretrial Services' petition to revoke bail release conditions and directed Pretrial Services to prepare and process a warrant application for the Court's signature. An arrest warrant was issued by the Court on December 15, 2024.

Defendant was apprehended by law enforcement officials on or about December 16, 2024 as she attempted to enter into Canada at a crossing at the Peace Bridge Port of Entry. Defendant appeared before Magistrate Judge Michael J. Roemer on December 17, 2024 for a removal hearing pursuant to Fed. R. Crim. P. 5. *See* No. 24-MJ-5222 (MJR) (W.D.N.Y. 2024), Dkt. Nos. 1-2. At the December 17, 2024 hearing, the Government moved for detention. *See* Dkt. No. 2. Judge Roemer ordered that Defendant be committed to the Eastern District of New York and remanded her to the custody of the U.S. Marshal Service. No. 24-MJ-5222, Dkt. Nos. 2-3.

On January 13, 2025, Defendant was indicted and charged with one count of being a stowaway on an aircraft. *See* Dkt. No. 10. Defendant was arraigned on January 15, 2025. A detention hearing occurred on the same date.

## II. Revocation of Release and Detention Order Under 18 U.S.C. § 3148(b)

### A. Legal Standards

Section 3148 of Title 18 provides for sanctions that may be imposed if a defendant released under 18 U.S.C. § 3142 violates a condition of that release. 18 U.S.C. § 3148. "A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a); *United States v. Shields*, No. 22-CR-00526 (JMA) (ST), 2024 WL 3925829, at *6 (E.D.N.Y. Aug. 23, 2024).

Section 3148(b) permits the government to file a motion with the Court to initiate a proceeding for revocation of an order of release. *See* 18 U.S.C. § 3148(b). A judicial officer may issue an arrest warrant for an individual charged with violating any conditions of release, and that individual shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding. *Id.* "The judicial officer shall enter an order of revocation and detention" if, at the hearing, the judicial officer:

> (1) finds that there is (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; *and*
>
> (2) finds that (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release.

*Id.* (emphasis added); *Shields*, 2024 WL 3925829, at *6; *United States v. LaFontaine*, 210 F.3d 125, 130 (2d Cir. 2000) ("A district court may revoke an order of release under 18 U.S.C. § 3148(b) if, after a hearing, the court determines either that there is probable cause to believe that the person has committed a Federal, State, or local crime while on release, or that there is clear and convincing

7

evidence that the person has violated any other condition of release. In addition, the district court must find that there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, or that the person is unlikely to abide by any condition or combination of conditions of release." (internal quotations and citations omitted)).

Under the second prong of the inquiry, the factors to be considered under Section 3142(g) include (1) "the nature and circumstances of the offense charged," including whether it was violent; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4); *see also United States v. Ward*, -- F. Supp. 3d --, 2024 WL 4116206, at *2 (E.D.N.Y. Sept. 9, 2024) (articulating standard); *Shields*, 2024 WL 3925829, at *5 (applying standard to revocation of release). Under subsection (3), the text of the statute "provides an illustrative list of factors that relate to a defendant's personal history and characteristics, including 'the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings [under 18 U.S.C. § 3142(g)(3)(A)].' Furthermore, subsection (g)(3)(B) instructs the court to consider whether the defendant was under court supervision when [s]he was arrested or committed the charged crime." *United States v. Zhang*, 55 F.4th 141, 149 (2d Cir. 2022) (internal citations omitted).

"The Second Circuit Court of Appeals has indicated that a finding that the defendant is a flight risk or danger will presumably support a finding that the person is unlikely to abide by conditions of release, and vice versa." *United States v. Parker*, 65 F. Supp. 3d 358, 363 (W.D.N.Y.

8

2014) (citing *United States v. Gotti*, 794 F.2d 773, 776 n.3 (2d Cir. 1986)). "It is well established that the Government may proceed by proffer at a bail revocation hearing." *United States v. Brooks*, 872 F.3d 78, 85, n.11 (2d Cir. 2017).

B. **Application**

Here, the Court finds that revocation of Defendant's release and an order directing that she be detained is warranted.

First, there is clear and convincing evidence that Defendant violated multiple conditions of her release. The conditions imposed by the Court at the December 6, 2024 hearing included, *inter alia*, that Defendant: be subject to GPS location monitoring; abide by a curfew at the assigned residence as directed by Pretrial Services; and be restricted to travel to the Eastern District of New York, the Southern District of New York, and the Eastern District of Pennsylvania (Philadelphia) for court purposes. Defendant failed to abide by any of those conditions.

Defendant's destruction of the GPS ankle monitor, her abscondment from her temporary residence at Mr. Mathew's home in Pennsylvania, and her subsequent travel to and apprehension at the Canadian border exhibit that she failed to subject herself to GPS monitoring and adhere to the curfew imposed by the Court, and that she traveled outside of the relevant districts to which her movements were restricted. *See* Minute Entry Dated Dec. 6, 2024; No. 24-MJ-5222, Dkt. Nos. 1-4 (containing information on Defendant's arrest in the Western District of New York and her transportation to return to this Court); *see also* 28 U.S.C. § 112(d) (indicating that Defendant's arrest location is within the Western District of New York). Defendant has therefore undoubtedly violated the conditions of her release. *See LaFontaine*, 210 F.3d at 133 (noting that bail may be revoked under Section 3148(b)(1)(B) by a showing of clear and convincing evidence that the defendant violated a release condition); *Shields*, 2024 WL 3925829, at *4 (finding that violations

9

of similar conditions established by clear and convincing evidence was sufficient under Section 3148(b)(1)(B)); *United States v. McGriff*, No. 21-CR-383 (WFK), 2022 WL 504459, at *3 (E.D.N.Y. Feb. 18, 2022) (same).

Next, the Court finds that the revocation of release and detention is warranted under the second prong of Section 3148(b). Considering the first and second factors under Section 3142(g), the nature and circumstances of the charged offense and the weight of the evidence support detention. Defendant is charged with a violation of 18 U.S.C. § 2199, where she attempted to obtain unauthorized transportation on a Delta Airlines flight departing from JFK without consent. Dkt. No. 1 at 1. Defendant's subsequent violation of her conditions of release mirrors the underlying offense: she attempted to travel outside of the districts in which she was permitted to travel and depart the United States without obtaining consent from the Government or the Court. On both occasions, Defendant was discovered and apprehended by law enforcement in areas where her presence was not authorized. The consistencies shown in Defendant's behavior prior to and following her release thus suggest that she will not abide by any conditions of release.

Concerning the third factor under Section 3142(g), Defendant's history and characteristics also favor detention. As noted at the December 6, 2024 hearing, Defendant does not have family or community ties within this district (or, for that matter, within this country). Nor has it been demonstrated that she has stable employment or a lengthy history of residence in or ties to a single community. Rather, her past conduct—including absconding from Court-ordered monitoring and the Government's contention that she has attempted unauthorized entry at an airport prior to the immediate offense—coupled with her representation to the Court that her family is in Europe, suggest that Defendant will continue her evasive behavior when presented with the opportunity. *See United States v. Wang*, 670 F. Supp. 3d 57, 69-70 (S.D.N.Y. 2023) (ordering detention where

10

the defendant presented a serious risk of flight because she had no community ties, she was never employed, and she had no friends or family in the United States), *aff'd*, 2023 WL 4551637 (S.D.N.Y. July 14, 2023); *United States v. Jones*, No. 3:12-CR-105 (RNC), 2012 WL 6737784, at *2 (D. Conn. Dec. 27, 2012) (finding history of repeated behavior on release sufficient to order detention). That Defendant violated the conditions while she was under Court supervision further bolsters this finding. *See Zhang*, 55 F.4th at 151 ("subsection (g)(3)(B) tells the court to consider whether the defendant was under court supervision when [she] was arrested or committed the charged crime").

At bottom, there is simply no condition or combination of conditions that will assure Defendant will not again attempt to flee or that she would be likely to abide by such conditions. *See Parker*, 65 F. Supp. 3d at 363 (finding that the defendant presented both a flight risk and a risk of danger); *Shields*, 2024 WL 3925829, at *6-*7 (revoking release and ordering detention when the defendant violated several conditions of release); *Wang*, 670 F. Supp. 3d at 69-70 (detaining the defendant on similar grounds).

Accordingly, the Court finds that revocation of Defendant's release and an order detaining Defendant are proper under 18 U.S.C. § 3148.

### III. Conclusion

For the foregoing reasons, the Court enters a permanent order of detention against Defendant.

Dated:   Brooklyn, New York
         January 15, 2025              **SO ORDERED.**

                                        */s/ Joseph A. Marutollo*
                                        JOSEPH A. MARUTOLLO
                                        United States Magistrate Judge