EDP:BET
F. #2024R00934

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

     - against -                        No. 25-CR-14 (AMD)

SVETLANA DALI,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


MEMORANDUM OF LAW IN SUPPORT OF
<u>THE GOVERNMENT'S MOTIONS IN LIMINE</u>

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Brooke Theodora
Assistant United States Attorney
    (Of Counsel)

# TABLE OF CONTENTS

Page

RELEVANT BACKGROUND ................................................................................................ 1

I.      JFK Stowaway Incident ........................................................................................... 1

II.     Other Airport Incidents ............................................................................................ 3

      A.     Miami International Airport Incident .......................................................... 3

      B.     Bradley International Airport Incident ......................................................... 4

ARGUMENT ...................................................................................................................... 5

I.      The Court Should Admit Evidence of the Defendant's Prior Successes in Evading Airport Security Measures .......................................................................................... 5

      A.     Applicable Law ............................................................................................. 6

      B.     Discussion .................................................................................................... 9

II.     ███████████████████████████████████████████████████ ................................................ 10

      A.     Applicable Law ........................................................................................... 11

      B.     Discussion .................................................................................................. 14

III.    The Court Should Preclude Evidence or Argument that Attempts to Shift Blame to the Government, TSA, or Delta ................................................................................. 16

IV.    The Court Should Admit the Defendant's Statements to Law Enforcement, and the Court Should Preclude the Defendant from Offering Her Own Statements as Hearsay ............ 18

      A.     Applicable Law ........................................................................................... 18

      B.     Discussion .................................................................................................. 20

V.      The Court Should Preclude Any Evidence By Defendant to Elicit Sympathy................. 21

VI.     The Court Should Preclude Evidence as to the Defendant's Lack of Criminal History... 22

VII.    The Court Should Preclude Evidence or Argument on the Government's Motives and
        Charging Decisions......................................................................................................... 23

VIII.   The Court Should Preclude Evidence or Argument Concerning Possible Punishment and
        Collateral Consequences ................................................................................................ 25

IX.     Improper Use of Agent Reports to Impeach Witnesses Should Be Precluded................. 26

X.      The Defendant Must Disclose Rule 16(b) Discovery and Trial Exhibits To Be Introduced
        During Her Case-in-Chief............................................................................................... 29

        CONCLUSION.................................................................................................................... 33

CASES

Lugosch v. Pyramid Co.,
    435 F.3d 110, 119-20 (2d Cir. 2006) ................................................................ 32, 33

Offor v. Mercy Med. Ctr.,
    167 F. Supp. 3d 414, 445 (E.D.N.Y. 2016) ............................................................ 33

Palermo v. United States,
    360 U.S. 343 (1959)....................................................................................................... 27

Shannon v. United States,
    512 U.S. 573 (1994)....................................................................................................... 25

United States v. Abu-Jihaad,
    630 F.3d 102 (2d Cir. 2011)........................................................................................... 8

United States v. Aref,
    533 F.3d 72 (2d Cir. 2008) ........................................................................................ 32

United States v. Ahmed,
    No. 14-CR-277 (DLI), 2016 WL 8732355 (E.D.N.Y. Jun. 24, 2016)..................... 16

United States v. Aiyaswamy,
    No. 15-CR-568 (LHK), 2017 WL 1365228 (N.D. Cal. Apr. 14, 2017) .................. 30

United States v. Almonte,
    956 F.2d 27 (2d Cir. 1992)................................................................................... 26, 27, 28

United States v. Armstrong,
    517 U.S. 456 (1996)....................................................................................................... 23

United States v. Ashburn,
    Docket No. 11-CR-303, 2015 WL 588704 (E.D.N.Y. Feb. 11, 2015) ...................... 6

United States v. Banjoko,
    590 F.3d 1278 (11th Cir. 2009) ................................................................................. 13

United States v. Barrett,
    153 F. Supp. 3d 552 (E.D.N.Y. 2015) ........................................................................ 8

United States v. Battaglia,
    Case No. 05-CR-774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008)............ 21

United States v. Bender,
  290 F.3d 1279 (11th Cir. 2002) ................................................................ 6

United States v. Blackwell,
  853 F.2d 86 (2d Cir. 1988).................................................................... 22

United States v. Blume,
  967 F.2d 45 (2d. Cir. 1992)................................................................... 25

United States v. Cameron,
  907 F.2d 1051 (11th Cir. 1990) ............................................... 11, 12, 13

United States v. Colon,
  880 F.2d 650 (2d Cir. 1989)..................................................................... 7

United States v. Curley,
  639 F.3d 50 (2d Cir. 2011)....................................................................... 8

United States v. Dupre,
  339 F. Supp. 2d 534 (S.D.N.Y. 2004)..................................... 11, 12, 13

United States v. Farhane,
  634 F.3d 127 (2d Cir. 2011)................................................................... 24

United States v. Gonzalez,
  110 F.3d 936 (2d Cir. 1997)..................................................................... 7

United States v. Gonzalez,
  399 F. App'x 641 (2d Cir. 2010) ........................................................... 19

United States v. Gotti,
  457 F. Supp. 2d 395 (S.D.N.Y. 2006)................................................... 18

United States v. Greer,
  631 F.3d 608 (2d Cir. 2011)..................................................................... 7

United States v. Harper,
  No. 05-CR-6068 (DGL), 2009 WL 140125 (W.D.N.Y. Jan. 20, 2009) ................................. 19

United States v. Harris,
  491 F.3d 440 (D.C. Cir. 2007)............................................................... 21

United States v. Heinrich,
  57 F.4th 154 (3d Cir. 2023) ................................................................... 14

United States v. Hernandez,
  No. 3:23-MJ-655, 2024 WL 707015, at *4 (D. Conn. Feb. 21, 2024) ................................... 33

United States v. Holden,
  No. 13-CR-444 (AJB), 2015 WL 1514569 (D. Or. Mar 19, 2015) ......................................... 30

United States v. Hsia,
  No. 98-CR-57 (PLF), 2000 WL 195067 (D.D.C. Jan. 21, 2000) ...................................... 28, 29

United States v. Ivencio-Belique-Emilia,
  65 F. App'x 788 (3d Cir. 2003) ................................................................................. 6

United States v. Jackson,
  180 F.3d 55 (2d Cir. 1999) ..................................................................................... 19

United States v. Jadusingh,
  No. 18-CR-257 (KAM), 2020 WL 207950 (E.D.N.Y. Jan. 14, 2020) .................................... 25

United States v. James,
  607 F. Supp. 3d 246 (E.D.N.Y. 2022) ........................................................................ 15

United States v. Johnson,
  507 F.3d 793 (2d. Cir. 2007) ................................................................................... 19

United States v. Jones,
  No. 16-CR-0553 (AJN), 2018 WL 1115778 (S.D.N.Y. Feb. 27, 2018) ...................... 11, 12, 13

United States v. Kaiser,
  609 F.3d 556 (2d Cir. 2010) ..................................................................................... 6

United States v. Knox,
  687 F. App'x 51 (2d Cir. 2017) ................................................................................ 23

United States v. Kone,
  216 F. App'x 74 (2d Cir. 2007) ................................................................................ 18

United States v. Larkin,
  No. 12-CR-319 (GWF), 2015 WL 4415506 (D. Nev. July 20, 2015) .................................... 30

United States v. Leonardi,
  623 F.2d 746 (2d Cir. 1980) ................................................................................ 26, 28

United States v. Lewis,
  110 F.3d 417 (7th Cir. 1997) ................................................................................... 25

United States v. Levy,
    731 F.2d 997, 1002 (2d Cir. 1984) ......................................................................... 7

United States v. Loera,
    No. 09-CR-466 (BMC), 2018 WL 2744701 (E.D.N.Y. June 7, 2018) .................................... 24

United States v. Lombardozzi,
    Docket No. 02-CR-273 (PKL), 2003 WL 1907969 (S.D.N.Y. Apr. 17, 2003) .......................... 8

United States v. Lumiere,
    249 F. Supp. 3d 748 (S.D.N.Y. 2017) .................................................................... 20

United States v. Malpeso,
    115 F.3d 155 (2d Cir. 1997) ......................................................................... 15, 22

United States v. Marin,
    669 F.2d 73 (2d Cir. 1982) ............................................................................... 18

United States v. McDaniel,
    398 F.3d 540 (6th Cir. 2005) ......................................................................... 18, 29

United States v. Mercado,
    573 F.3d 138 (2d Cir. 2009) ............................................................................... 8

United States v. Mickens,
    926 F.2d 1323 (2d Cir. 1991) ............................................................................. 7

United States v. Miller,
    641 F. Supp. 2d 161 (E.D.N.Y. 2009) ................................................................ 20, 21

United States v. Napout,
    No. 15-CR-252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017) .................................. 30

United States v. Ortiz,
    857 F.2d 900 (2d Cir. 1988) ............................................................................... 7

United States v. Paccione,
    949 F.2d 1183 (2d Cir. 1991) ............................................................................ 21

United States v. Pohlot,
    827 F.2d 889 (3d Cir. 1987) ............................................................................. 11

United States v. Ray,
    583 F. Supp. 3d 518 (S.D.N.Y. 2022) ................................................................... 12

United States v. Reese,
  933 F. Supp. 2d 579 (S.D.N.Y. 2013) ................................................................ 24

United States v. Regan,
  103 F.3d 1072 (2d Cir. 1997).............................................................................. 23

United States v. Roldan–Zapata,
  916 F.2d 795 (2d Cir. 1990)................................................................................. 8

United States v. Rosado,
  728 F.2d 89 (2d Cir. 1984).................................................................................. 23

United States v. Russo,
  172 F.2d 553 (2d Cir. 1949) ............................................................................ 6, 14

United States v. Sabir,
  No. 05-cr-673 (LAP), 2007 WL 1373184 (S.D.N.Y. May 10, 2007)................ 11, 12

United States v. Saldarriaga,
  204 F.3d 50, 52 (2d Cir. 2000)............................................................................ 24

United States v. Schneider,
  111 F.3d 197 (1st Cir. 1997)............................................................................... 13

United States v. Smothers,
  No. 20-CR-213 (KAM), 2023 WL 348870 (E.D.N.Y. Jan. 20, 2023) ............ 29, 30

United States v. Sterritt,
  No. 21-CR-193 (KAM), 2023 WL 7386660 (E.D.N.Y. Nov. 8, 2023).................. 15

United States v. Stewart,
  No. 03-CR-717 (MGC), 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004)................... 24

United States v. Sullivan,
  118 F.4th 170 (2d Cir. 2024) .......................................................................... 15, 16

United States v. Swenson,
  298 F.R.D. 474 (D. Idaho 2014) ......................................................................... 30

United States v. Thomas,
  377 F.3d 232 (2d Cir. 2004)................................................................................ 16

United States v. Towne,
  870 F.2d 880 (2d Cir. 1989)................................................................................. 6

United States v. Ulbricht,
    79 F. Supp. 3d 466 (S.D.N.Y. 2015) ............................................................. 7, 9

United States v. Young,
    701 F3d 1235 (8th Cir. 2012) ......................................................................... 9

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003) ............................................................................ 18

United States v. Zackson,
    12 F.3d 1178 (2d Cir.1993) ........................................................................... 7

Williams v. Vahey,
    No. 20-CV-2560 (KAM), 2023 WL 130834 (E.D.N.Y. Jan. 8, 2023) ................... 31

## STATUTES

18 U.S.C. § 17(a) ................................................................................................. 11

18 U.S.C. § 2199 .............................................................................................. 1, 5

18 U.S.C. § 3500 ............................................................................................ 26, 27

18 U.S.C. § 3500(e) ............................................................................................ 27

## RULES

Fed. R. Crim. P. 16(b)(1)(A) ............................................................................... 28

Fed. R. Crim. P. 26.2 ...................................................................................... 26, 31

Fed. R. Evid. 405(a) ............................................................................................ 22

Fed. R. Evid. 613 ............................................................................................... 26

Fed. R. Evid. 613(a) ........................................................................................... 27

Fed. R. Evid. 801(d)(2)(A) .................................................................................. 18

Fed. R. Crim. P. 12.2(a)-(b) ................................................................................ 10

Fed. R. Crim. P. 16(b) ........................................................................................ 28

Fed. R. Evid. 403 .................................................................................. 7, 15, 21, 22

Fed. R. Evid. 401 ................................................................................................. 6

## OTHER AUTHORITIES

Tr. 41 (E.D.N.Y. Aug. 23, 2023) .................................................................................................... 29

<u>RELEVANT BACKGROUND</u>[1]

On January 13, 2025, a grand jury in this District indicted the defendant Svetlana Dali with one count of being a stowaway on an aircraft, in violation of 18 U.S.C. § 2199. As alleged in the indictment, on November 26, 2024, the defendant snuck onto Delta Air Lines ("Delta") flight DL264 (hereinafter, "Flight 264") at John F. Kennedy International Airport ("JFK") and flew without a ticket to Charles de Gaulle Airport ("CDG") in Paris, France. Jury selection is scheduled for May 19, 2025, with trial to begin thereafter.

I.  <u>JFK Stowaway Incident</u>

At trial, the government intends to show that the defendant deliberately boarded Flight 264 without consent, and with the intent to travel, through evidence that she took carefully calculated steps to evade airport security measures, which enabled her to infiltrate Flight 264 and remain undetected until she was almost in Paris. The government expects to introduce evidence of the following, among other things: on November 26, 2024, the defendant attempted to get in line at a JFK Transportation Security Administration ("TSA") security checkpoint without showing a boarding pass or identification card, but was initially turned away by a Travel Document Checker.[2] Undeterred, she quickly moved to a different security line, where she was

---

[1]    The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial. In addition, the proffer of facts set forth in this motion as to any witness's anticipated testimony is a collection of the sum and substance of the witness's anticipated testimony and does not purport to provide a complete statement of all facts and evidence of which the government is aware or will seek to introduce through the respective witness's anticipated testimony.

[2]    A Travel Document Checker is an airport security officer responsible for verifying travelers' identification and boarding passes before they proceed to TSA security screening. Generally, the Travel Document Checker checks the authenticity of the traveler's ID and ensures the traveler's boarding pass matches their ID and is valid for travel. Many airports

able to successfully bypass the mandatory boarding pass and identification checks by sneaking through a special employee lane by hiding herself among a large flight crew. After going through security, the defendant snuck onto Flight 264—a completely full flight—by bypassing yet another security checkpoint at the gate entrance, where two facial recognition kiosks were stationed to verify each passenger's eligibility to board by matching their face to their passport and travel documents. The defendant slipped past these security stations by waiting until the two Delta employees operating them were each focused on ensuring that groups of passengers who appeared to be traveling together were verified by the facial recognition kiosks. Seizing on a moment when each gate agent was looking the other way, the defendant darted up to the groups, slipped by the facial recognition kiosks, and closely followed them onto the plane as they were cleared to enter the jetway.[3]

Once the defendant boarded Flight 264, she continued her scheme. The defendant went into one of the plane's lavatories and hid there with her large backpack for several hours to avoid detection. When a flight attendant noticed her lengthy bathroom visit, the defendant manipulated her into believing she was sick by pretending she was vomiting to excuse her

---

use Credential Authentication Technology ("CAT") scanners to assist with these responsibilities, the purpose of which is protect the public from security risks associated with the presence of unauthorized and unvetted individuals in secure areas of the airport. See, e.g., "Credential Authentication Technology," TRANSPORTATION SECURITY ADMINISTRATION, https://www.tsa.gov/travel/security-screening/credential-authentication-technology (last accessed May 2, 2025).

[3] As described in more detail in Section III of the Argument portion of this memorandum, the government has recently been made aware of internal Delta reports alleging that a passenger saw the defendant sneak past the facial recognition stations. The government understands that the passenger promptly notified one of the Delta gate agents, who apparently did not notify anyone that the defendant was onboard without being vetted and verified. For the reasons described below, we believe the Court should preclude this evidence because it is irrelevant to the issue of the defendant's intent and to the issue of whether Delta consented to the defendant being onboard Flight 264.

prolonged time in the bathroom. Shortly before landing, the captain announced that the plane's descent would be turbulent and instructed everyone to take their seats, including the crew. As the flight crew rushed to secure the plane, the same flight attendant realized the defendant was still in the bathroom and instructed her to take her seat. The defendant continued to pretend to vomit, but the flight attendant insisted she sit down. When the defendant could not find a seat, the flight attendant asked for her name along with identification and her boarding pass. The defendant gave her two fake names and failed to produce any boarding pass or ID.

Alarmed, the flight attendant realized the defendant was not authorized to be on board and instructed the defendant to sit in a seat reserved for flight crew. Scared that the defendant might be dangerous, the flight attendant positioned herself between the defendant and other passengers for their safety. The flight crew notified French law enforcement, who arrested the defendant on the plane as soon as it landed in Paris. Later, when the defendant was returned to the United States, she was taken into custody by U.S. authorities and interviewed at JFK, where she admitted to flying on Flight 264 without a ticket, evading airport security measures, and knowing her conduct was illegal, among other things.

II.   Other Airport Incidents

To prove that the defendant's actions in stowing away on Flight 264 were deliberate and intentional—and to complete the story of her scheme—the government intends to offer evidence showing that the defendant has successfully evaded airport security measures at other airports on at least two prior occasions, each of which was within less than a year of the charged conduct.

A.   Miami International Airport Incident

First, in or about February 2024, U.S. Customs and Border Protection ("CBP") agents discovered the defendant hiding in a bathroom within a Federal Inspection Services

("FIS") area[4] in the Miami International Airport ("MIA") in Miami, Florida. The FIS area where the defendant was found is part of a secure international arrivals zone, located just before international travelers must proceed through customs to enter the United States. The government anticipates that a CBP agent would testify that the defendant claimed she was waiting for her husband in this area and said she had just arrived on an Air France flight. This is despite that the agent could not find any records of the defendant on an Air France flight that day, and that there were no records of the defendant leaving the United States for approximately the last five years. Moreover, the defendant did not have her permanent resident card with her.[5] After checking the entry points to the FIS area, fingerprinting the defendant, and searching her baggage, CBP agents escorted the defendant out of the airport.[6]

B.     Bradley International Airport Incident

Second, on or about November 24, 2024—two days before the JFK stowaway incident—the defendant similarly accessed a secure area of the departures terminal at Bradley International Airport ("BDL") in Hartford, Connecticut. The government anticipates that a TSA

---

[4]     FIS areas are secure zones within international airports where CBP and other law enforcement agents conduct inspections of arriving international passengers and cargo.

[5]     The defendant became a lawful permanent resident of the United States in February 2015. She currently holds a valid permanent resident card.

[6]     Although the CBP agents did not make any findings that the defendant had illegally traveled as a stowaway to MIA and/or somehow illicitly entered the United States, the defendant's post-arrest statements to law enforcement in this case, combined with her unexplained presence in the FIS area at MIA, tend to compel that conclusion. During her post-arrest interview in this case, the defendant told law enforcement that she had spent time in France and Belgium in approximately 2022 before eventually returning to the United States in February 2024, and that she has previously attempted to travel as a stowaway. However, there are no records of the defendant being admitted to the United States at any border or port of entry within the last five years (aside from records relating to her arrest at the Canadian border in December 2024, which is when she cut off her ankle bracelet and absconded in connection with this case).

officer would testify that he reviewed BDL security footage from November 24, 2024 to determine whether the defendant had evaded airport security at BDL just like she had at JFK. The investigation uncovered that, just like at JFK, the defendant similarly tried twice to enter TSA security checkpoints at BDL without a boarding pass—the first time unsuccessfully, and the second time successfully—wearing what appeared to be the same boots and backpack that she was wearing at JFK.

Although there is no evidence that the defendant boarded or traveled on a flight illegally from BDL, the BDL security footage shows that the defendant bypassed BDL security checkpoints in a manner that is strikingly similar to her conduct at JFK and MIA. At BDL, the defendant was likewise able to sneak past identification and boarding pass checkpoints by hiding among other passengers while Travel Document Checkers were focused on vetting other people. The defendant subsequently went through security alongside ticketed passengers, and then she hid in the bathroom in the terminal for a lengthy period to avoid detection. She also appeared to try to access a domestic Jet Blue flight by getting in the boarding line but was not able to board. The security footage ultimately shows the defendant leaving BDL that evening through a baggage terminal where there is access to several buses that carry passengers to transportations hubs, at least one of which offers rail transportation to New York City.

ARGUMENT

I.    <u>The Court Should Admit Evidence of the Defendant's Prior Successes in Evading Airport Security Measures</u>

The Court should admit the government's evidence of the defendant's prior successes in bypassing airport security measures leading up to her actions at JFK. This evidence is directly admissible because it is both inextricably intertwined with and completes the story of the charged conduct. In the alternative, this evidence is admissible as other acts evidence

5

pursuant to Federal Rule of Evidence 404(b) because it tends to show that the defendant had the opportunity, intent, and deliberate plan to travel as a stowaway in the manner alleged in the indictment.

A.    Applicable Law

1.    Elements of 18 U.S.C. § 2199

Title 18, United States Code, Section 2199 provides, in relevant part, as follows:

> Whoever, without the consent of the owner, charterer, master, or person in command of any vessel, or aircraft, with intent to obtain transportation, boards, enters or secretes himself aboard such vessel or aircraft and is thereon at the time of departure of said vessel or aircraft from a port, harbor, wharf, airport or other place within the jurisdiction of the United States . . . . shall [be punished].

To convict the defendant under the relevant provision of § 2199, the government must prove each of the following elements beyond a reasonable doubt:

> First, the defendant boarded an aircraft without the consent of the owner, charterer, master, or person in command;

> Second, the defendant did so with the intent to obtain transportation;

> Third, the defendant remained onboard after the aircraft departed; and

> Fourth, the aircraft departed from a place within the jurisdiction of the United States.

See United States v. Ivencio-Belique-Emilia, 65 F. App'x 788, 791 (3d Cir. 2003); United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002); see also United States v. Russo, 172 F.2d 553, 554 (2d Cir. 1949).

2.    Direct Evidence

It is well-established that the government is entitled to prove acts other than those specifically set forth in an indictment if those acts "arose out of the same transaction or series of transactions as the charged offense, [are] inextricably intertwined with the evidence regarding

the charged offense, or if [they are] necessary to complete the story of the crime on trial." See, e.g., United States v. Kaiser, 609 F.3d 556, 570 (2d Cir. 2010); United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989). Further, evidence of other acts may be admitted as direct evidence where it provides "[b]ackground . . . to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." United States v. Ashburn, Docket No. 11-CR-303, 2015 WL 588704, at *10 (E.D.N.Y. Feb. 11, 2015) (quotation marks and citations omitted). Such evidence is directly admissible as relevant under Federal Rules of Evidence 401 and 402 because it "tend[s] to prove the government's case," and relevant evidence is "not confined to that which directly establishes an element of the crime." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997).

### 3. Federal Rule of Evidence 404(b)

Even if not admissible as direct evidence, other acts evidence may also be admissible under Rule 404(b) to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." A party must satisfy three requirements for evidence of "other crimes, wrongs or acts" to be admitted under Rule 404(b). First, the evidence must be offered for a purpose other than to prove the defendant's bad character or criminal propensity. See United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991) (citing United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989)). Second, the evidence must be relevant under Rules 401 and 402 and more probative than prejudicial in accordance with Federal Rule of Evidence 403. See Mickens, 926 F.2d at 1328 (citing United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988)); Levy, 731 F.2d at 1002. Third, if the defendant requests a jury instruction as to the limited purpose for which the government's evidence is admitted, the court must furnish such an instruction. See Mickens, 926 F.2d at 1328-29; Levy, 731 F.2d at 1002.

The Second Circuit follows an "inclusionary rule" permitting the "admission of [Rule 404(b)] evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies" Rule 403's balancing test. See United States v. Greer, 631 F.3d 608, 614 (2d Cir. 2011). In particular, when "a defendant claims that his conduct has an innocent explanation, other act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." United States v. Ulbricht, 79 F. Supp. 3d 466, 479 (S.D.N.Y. 2015) (quoting United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir.1993)). Courts have held that such evidence is admissible in the government's case-in-chief unless the defendant "stipulate[s] that he had the requisite intent and knowledge to commit the crimes charged in the indictment." See United States v. Lombardozzi, Docket No. 02-CR-273 (PKL), 2003 WL 1907969, at *6 (S.D.N.Y. Apr. 17, 2003).

With respect to undue prejudice under Rule 403, courts have concluded that other acts evidence is admissible when it is not "any more sensational or disturbing than the crimes" with which the defendant has been charged. United States v. Roldan–Zapata, 916 F.2d 795, 804 (2d Cir. 1990); see also United States v. Curley, 639 F.3d 50, 59 (2d Cir. 2011) (finding that the district court did not err in concluding that the probative value of prior acts of domestic violence with similar characteristics to the charged conduct outweighed the potential prejudicial effect when the prior acts were no more sensational than the charged conduct); United States v. Abu-Jihaad, 630 F.3d 102, 132–33 (2d Cir. 2011) (finding that conversations referencing uncharged support of jihad were "no more inflammatory than the charges alleged in the indictment"); United States v. Mercado, 573 F.3d 138, 142 (2d Cir. 2009) (upholding the district court's admission of evidence under Rule 403 where the challenged evidence was "not especially worse or shocking than the transactions charged" and where the district court instructed the jury as to

what inferences could properly be drawn from such evidence); United States v. Barrett, 153 F.

Supp. 3d 552, 570-71 (E.D.N.Y. 2015) (concluding that Rule 403 permitted introduction of

evidence because "[t]here is nothing inherently more incendiary, sensational, or prejudicial about

the charged tax fraud than the charged health care fraud, false claims, and money laundering.").

B.    Discussion

Evidence of the defendant's prior efforts to evade airport security in the lead-up to

the charged conduct is admissible as direct evidence because it completes the story of the crime

charged in the indictment.  It shows that the defendant's actions at JFK were methodically

planned based on her past experience, uniquely positioning her to bypass strict security

checkpoints at the airport that should have prevented her conduct.  This tends to prove an

essential component of the charged crime, i.e., that the defendant's actions at JFK were

deliberately and intentionally designed to obtain air transportation without consent.  The

remarkably similar way in which the defendant was able to bypass checkpoints at each airport—

e.g., by slipping undetected into secure areas without proper documentation and hiding among

groups of passengers and in bathrooms—bolsters this conclusion and also shows how the

defendant's past conduct is inextricably intertwined with charged scheme.

Even assuming arguendo that this evidence is subject to Rule 404(b), it is

nevertheless admissible because it is not being offered to show the defendant has bad character

or criminal propensity.  Rather, it is being offered to show that the defendant had the

opportunity, intent, and deliberate plan to travel as a stowaway in the manner alleged in the

indictment, and that she did not perform the charged acts by accident or mistake.  Although the

government does not know what the defendant intends to argue (if anything) at her trial, to the

extent she attempts to argue that her conduct "has an innocent explanation," proof of her prior

successes in evading airport security is crucial to showing that she knew what she was doing and

that she "acted with the state of mind necessary to commit the offense charged." See Ulbricht, 79 F. Supp. 3d at 479 (quotations omitted).  And with respect to the BDL incident in particular—which occurred just two days prior to the charged conduct—such prior act evidence is also proof of the defendant's common plan and identity.  As referenced above, security footage from both BDL and JFK depicts the defendant engaging in the same distinctive pattern of following closely behind other passengers to slip undetected past airport officials while wearing what appears to be the same boots and large backpack. See United States v. Young, 701 F3d 1235, 1239 (8th Cir. 2012) (other robbery admissible to prove identity where "bank robber in each state wore the same type of shirt and baseball hat, thus displaying the same 'signature feature' in committing the crimes").

Finally, this other acts evidence is admissible under Rule 403 because it is no more sensational or disturbing than the crime with which the defendant has been charged. Indeed, the charged conduct at JFK is plainly more "sensational" than this other acts evidence, as the charged conduct is the only instance in which there is direct evidence that the defendant actually completed her stowaway scheme.  Accordingly, the Court should admit this evidence as direct evidence of the charged crimes or, in the alternative, pursuant to Rule 404(b).

II.













III.   The Court Should Preclude Evidence or Argument that Attempts to Shift Blame to the Government, TSA, or Delta

The defendant and her counsel should likewise be precluded from introducing evidence or making arguments before the jury that attempt to shift the blame for the defendant's conduct to the government, TSA, or Delta, all of whom indisputably did not prevent her scheme. This argument "is nothing more than a Trojan horse carrying an impermissible victim blaming defense," and thus should be precluded under Rules 401, 402, and 403. United States v. James, 607 F. Supp. 3d 246, 255 (E.D.N.Y. 2022).

"Simply put, the victim's negligence in permitting a crime to take place does not excuse the defendant from culpability for his substantive offense." United States v. Sullivan, 118 F.4th 170, 228 (2d Cir. 2024). Because such evidence is irrelevant and misleading, courts in this district have routinely precluded defendants from making arguments about a victim's failure to discover their deliberately criminal acts, even if such failure was negligent. See, e.g., Sullivan, 118 F.4th 170 (in theft of federal funds case, rejecting defendant's argument that the victim's "failure . . . to exercise proper diligence to uncover" the "true nature" of the defendant's crime "does not demonstrate that [the victim] consented to Defendants' theft"); United States v. Thomas, 377 F.3d 232, 241-43 (2d Cir. 2004) (rejecting argument that jury should have been instructed "that there can be no fraud if the victim did not act as a person of ordinary prudence and comprehension would," finding the ordinary prudence standard "is not a shield which a defendant may use to avoid a conviction for a deliberately fraudulent scheme"); United States v. Udeokoro, No. 17-CR-629 (AMD), ECF Dkt. No. 94 (E.D.N.Y. Jun. 22, 2023) ("It is well-settled in this circuit that a defendant charged with a fraudulent scheme may not assert as a defense the victim's failure to discover the fraud."); United States v. Ahmed, No. 14-CR-277 (DLI), 2016 WL 8732355, *4 (E.D.N.Y. Jun. 24, 2016) (prohibiting defendant from "assert[ing]

at trial that he subjectively believed his billing practices were proper, in part because Medicare continued to pay his claims without any notice or indication of its objection" (quotation marks omitted)).  Accordingly, the Court should likewise preclude any evidence or argument by the defendant that implies that the government, TSA, and/or Delta should have discovered her in the act of stowing away, or that those entities should be blamed instead of the defendant.

        The defendant should similarly be precluded from arguing that Delta somehow tacitly consented to her boarding Flight 264 through individual employee negligence.  <u>See</u> <u>Sullivan</u>, 118 F.4th at 228 ("even if [certain board members of the victim company] had tacitly understood that [the defendant's] trips were improper and chose[] not to press the issue so that they could continue attending such trips, Defendants would not be absolved of their theft.").  The government has recently been made aware of internal Delta reports that allege that a ticketed passenger on Flight 264 saw the defendant sneak past the facial recognition stations and promptly notified one of the Delta gate agents.[11]  The government understands that the gate agent apparently did not do anything or notify anyone about the passenger's report.  This evidence should likewise be precluded under Rules 401, 402, and/or 403 because it is irrelevant to the issue of whether Delta consented to the defendant being on Flight 264.  It is irrefutable that Delta as a company clearly does not allow unticketed passengers to fly on its planes (and nor does the federal government).  Evidence concerning the apparent negligence of one employee in failing to act on a complaint by a customer about such a violation does not change that.  Rather, such evidence would plainly amount to an improper victim blaming defense that would serve

---

[11]    The government does not yet have the official versions of these reports but will produce them promptly to the defendant when they are received.

only to confuse and mislead the jury about this issue of consent.  Accordingly, such evidence should be precluded.

IV.  <u>The Court Should Admit the Defendant's Statements to Law Enforcement, and the Court Should Preclude the Defendant from Offering Her Own Statements as Hearsay</u>

At trial, the government intends to admit evidence of certain of the defendant's statements to law enforcement during her post-arrest interview on December 4, 2024 (approximately a week after she stowed away on Flight 264).  The statements may include, for example, that the defendant did not have a ticket for Flight 264, that she never presented a ticket before going through security and boarding Flight 264, that she is the person shown evading boarding pass checkpoints on the pertinent JFK surveillance footage, and that she knew she was breaking the law by boarding Flight 264 without a ticket (although she thought the law she was breaking was only an "administrative law").  For the reasons described below, the Court should admit the government's evidence of the defendant's statements but it should preclude the defendant from offering her own statements, which are inadmissible hearsay when offered by the defendant.

A.  <u>Applicable Law</u>

Out-of-court statements made by a defendant are not hearsay when introduced by the government in a criminal trial to prove the truth of the facts stated therein because they are admissions of an adverse party.  <u>See</u> Fed. R. Evid. 801(d)(2)(A) (establishing that a statement offered against an opposing party that "was made by the party in an individual or representative capacity" is not hearsay); <u>United States v. Kone</u>, 216 F. App'x 74, 76 (2d Cir. 2007) ("Statements made by the defendant, where relevant, may be introduced by the government in a criminal trial to prove the truth of the facts stated in them because they are admissions of an adverse party.").

However, the same statements, if offered by the defendant to prove their truth, would constitute hearsay. It is well-established that a defendant generally is prohibited from introducing his own out-of-court statements at trial. See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); see also United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003) ("[W]hile the Government was free to introduce the statement as an admission by a party-opponent, [the defendant] had no right to introduce it on his own."). Were the law otherwise, a defendant "could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." United States v. McDaniel, 398 F.3d 540, 545 (6th Cir. 2005).

A limited exception is created by Rule 106, the rule of completeness, which permits a defendant to introduce otherwise hearsay statements only where she can show those statements are "essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact." United States v. Gotti, 457 F. Supp. 2d 395, 397-98 (S.D.N.Y. 2006). But out-of-court statements are not admissible under Rule 106 unless "their exclusion would unfairly distort the meaning of the declarant's non-hearsay statements that are in evidence." United States v. Harper, No. 05-CR-6068 (DGL), 2009 WL 140125, at *5 (W.D.N.Y. Jan. 20, 2009). Accordingly, the Second Circuit has excluded hearsay statements offered by a defendant that were unnecessary to explain or appropriately contextualize an already admitted statement. See United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2010) (affirming exclusion of portion of defendant's statement where admitted portion did not distort the meaning of the full statement); United States v. Johnson, 507 F.3d 793, 796 (2d. Cir. 2007) (affirming exclusion of portions of confession that did not explain the

admitted portion or place the admitted portion in context); <u>United States v. Jackson</u>, 180 F.3d 55, 73 (2d Cir. 1999) (rejecting claim under the completeness doctrine that other portions of conversation provided relevant context and noting that "the portions of the tape proffered by [defendant] consisted largely of [his] own self-serving statements, which, as offered by him, are inadmissible hearsay").

B.     <u>Discussion</u>

The Court should admit the government's evidence of the defendant's inculpatory statements to law enforcement, which are plainly admissible under Rule 801(d)(2)(A) as out-of-court statements made by a party-opponent.  But the Court should preclude the defendant from admitting evidence of her own statements—whether in her case-in-chief or through cross-examination of the government's witnesses—because, as offered by the defendant, these statements are inadmissible hearsay.[12]

To the extent the defendant intends to offer any statements under the "rule of completeness"—a highly limited doctrine—she should explain in advance of trial why those statements are admissible under that doctrine.  As described above, the defendant's inculpatory statements that the government seeks to admit are not confusing, and the defendant's other statements to law enforcement—most which concerned her personal history and beliefs that she has been harmed by government officials, which is irrelevant to this case—are plainly not necessary to place them in context. <u>See</u> <u>United States v. Lumiere</u>, 249 F. Supp. 3d 748, 758 (S.D.N.Y. 2017) (declining to introduce additional statements by the defendant in a recording

---

[12]     To the extent that the defendant attempts to introduce her own statements under the "then-existing" state of mind hearsay exception provided by Federal Rule of Evidence 803(3), the statements should still be precluded.  The defendant sat for her interview with law enforcement over a week after she committed the crime, so any statements at the interview are not indicative of her state of mind when she committed the act of stowing away.

under the rule of completeness because "they represented [the defendant's] self-serving attempts to shoehorn after-the-fact justifications for his actions into his descriptions of his actions").

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████

## V.     The Court Should Preclude Any Evidence by Defendant to Elicit Sympathy

███████████████████████████████████████████████

████  the defendant should be precluded from commenting, introducing, or eliciting any evidence that seeks to elicit sympathy from the jury including, but not limited to, evidence concerning her personal or family circumstances.

"District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice." United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009).  Additionally, courts have discretion to exclude evidence if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Adv. Comm. Notes.  Indeed, when evidence is of limited probative value, it should be excluded if it has the "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses." Miller, 641 F. Supp. 2d at 167; see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that the defendant had son with cerebral palsy); United States v. Battaglia, Case No. 05-CR-774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); United States v. Harris, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

████████████ it is unclear what, if any, evidence the defendant may seek to introduce concerning her personal or family circumstances. In any event, evidence of the defendant's personal hardships, including purported health issues or family status, has no tendency to make any "facts of consequence" in this case more or less probable and thus should be excluded. Such topics simply have no bearing on whether the defendant committed the charged crimes. Any evidence relating to these topics is irrelevant and, therefore, inadmissible.

Even assuming, _arguendo_, that the defendant's personal hardships, health, or family status had some limited probative value, that value would be far outweighed by the danger of unfair prejudice to the government and juror confusion. Rather, the clear purpose for introducing evidence of these details would be to elicit sympathy for the defendant, distract from the facts at issue, and invite the jury to look past the defendant's conduct in this case. This sort of emotional appeal to the jury's sympathy should be excluded under Rule 403. See United States v. Malpeso, 115 F.3d 155, 162-63 (2d Cir. 1997) (excluding evidence and precluding argument on issues that had "little or no relevance" to the charged crimes and might encourage jury nullification); Fed. R. Evid. 403, Adv. Comm. Notes (stating that exclusion is appropriate where evidence creates "risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme").

VI.    The Court Should Preclude Evidence as to the Defendant's Lack of Criminal History

The defendant should also be precluded from offering evidence of her lack of criminal history unless and until she testifies at trial.

The Federal Rules of Evidence ordinarily prohibit witnesses from proving good character through specific instances of conduct. See Fed. R. Evid. 405(a). The Second Circuit

22

has concluded, however, that evidence of a lack of prior convictions or arrests is admissible for the purpose of gauging the credibility of a testifying witness. See United States v. Blackwell, 853 F.2d 86, 88 (2d Cir. 1988) (noting the "relatively low probative value" of this evidence). Thus, such evidence becomes relevant and admissible if—and only if—the defendant testifies, and even then for the limited purpose of providing background information relating to her credibility as a witness.

Accordingly, consistent with Blackwell, the defendant should be precluded from using the absence of a prior criminal record, or any other evidence of specific instances of good conduct, to prove good character. Additionally, the government requests that the defendant be precluded from informing the jury of her lack of criminal history, unless and until she chooses to testify. Counsel thus should not be permitted to advise the jury of the defendant's lack of criminal history in opening statements, through cross-examination or otherwise. To allow otherwise would confuse the issues under consideration, in violation of Rule 403, and violate Rule 405(b)'s restrictions against proving good character through specific instances of conduct.

VII. The Court Should Preclude Evidence or Argument on the Government's Motives and Charging Decisions

The defendant and her counsel should also be precluded from introducing evidence or making arguments before the jury regarding the government's motives and charging decisions, including argument that the government should not have charged the defendant federally because her conduct was trivial or petty. Such evidence and argument are irrelevant to innocence or guilt and present a substantial risk of misleading the jury or inviting jury nullification. They should be categorically precluded.

Courts have consistently held—and often give jury instructions reflecting—that arguments regarding the government's decisions during an investigation and its motives and

timing in bringing charges are irrelevant, unduly prejudicial and improperly invite jury nullification.  See, e.g., United States v. Knox, 687 F. App'x 51 (2d Cir. 2017) (instructing jury that "government is not on trial" is "appropriate"); United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial").  That is so because a claim that a prosecution has been brought selectively, or for improper motives, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996).  "Because it involves a defect in the institution of the prosecution, the selective prosecution defense is an issue for the court rather than the jury." United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997).

Courts consistently preclude defendants from argument related to the government's motives and charging decisions, including arguments that a defendant was improperly targeted.  See, e.g., United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011) (affirming district court's ruling precluding defendant from arguing in summation that government had improperly targeted him for prosecution); United States v. Loera, No. 09-CR-466 (BMC), 2018 WL 2744701, at *6 (E.D.N.Y. June 7, 2018) ("[S]elective-prosecution argument by defendant to the jury would . . . be improper."); United States v. Webb, No. 15-CR-252 (PKC), ECF No. 1275, Trial Transcript at 3630:09-3632:12  (E.D.N.Y. Dec. 11, 2017) ("making argument in the vein of selective prosecution or the government's motive in conducting its investigation; for example, not getting certain evidence or pursuing certain leads

and potentially focusing on certain defendants is . . . inappropriate" at trial); <u>United States v.</u> <u>Reese</u>, 933 F. Supp. 2d 579, 583-84 (S.D.N.Y. 2013) ("[A] defendant may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case."); <u>United States v. Stewart</u>, No. 03-CR-717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (precluding defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant]").  The Court should do the same here.

Ultimately, the jury's attention belongs on "the evidence or lack of evidence that had been presented at trial," <u>Saldarriaga</u>, 204 F.3d at 52, not on the government's purported motives or charging decisions.  At the defendant's bail hearing, counsel argued that the defendant's conduct is akin to "jumping a turnstile," which tends to imply that the defendant should not have been charged federally due to the allegedly petty nature of her conduct.  To the extent counsel intends to introduce evidence or make similar arguments the defendant's trial, he should be precluded from doing so under the authorities described above.  Evidence concerning such matters is irrelevant, and introduction of evidence or argument concerning the motives behind the government's investigation would present an unacceptable risk of confusing the issues and misleading the jury.

VIII.  <u>The Court Should Preclude Evidence or Argument Concerning Possible Punishment and Collateral Consequences</u>

The defendant likewise should be precluded from offering evidence or argument concerning the punishment or consequences she faces if convicted.  Such argument or evidence is irrelevant and therefore inadmissible.

Where the jury has no role at sentencing—such as in this case—it "should be admonished to reach its verdict without regard to what sentence might be imposed."  <u>Shannon v.</u>

United States, 512 U.S. 573, 579 (1994). This is for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion." Id. Ultimately, any reference during trial to possible punishment may only "prejudice, distract, or confuse the jury." United States v. Jadusingh, No. 18-CR-257 (KAM), 2020 WL 207950, at *3 (E.D.N.Y. Jan. 14, 2020). Accordingly, "[f]ederal courts usually instruct juries not to consider a verdict's consequences." United States v. Blume, 967 F.2d 45, 49 (2d. Cir. 1992); see United States v. Lewis, 110 F.3d 417, 422 (7th Cir. 1997) (holding that district court correctly refused to permit defendant to argue about the severity of his possible punishment). The same principles apply to the politically sensitive topic of immigration, and any discussion of impact on the defendant's immigration status could unfairly prejudice either party. Guilt should determine punishment, not the other way around. See United States v. Del Rosario, No. 12-CR-81 (KBF), 2012 WL 2354245, at *2 (S.D.N.Y. June 14, 2012) ("The only possible basis upon which defendant could seek to introduce evidence of punishment (including deportation) is to focus the jury on something other than whether the elements of the crime charged have been proven beyond a reasonable doubt.").

Although the defendant has not stated her intention to reference the possible consequences of her conviction at trial, the government moves to preclude any mention of sentence and collateral consequences out of an abundance of caution. Any reference to sentencing and collateral consequences will serve to confuse the jury, undermine its role as the trier of fact, and invite nullification.

IX.     Improper Use of Agent Reports to Impeach Witnesses Should Be Precluded

In accordance with its obligations under Fed. R. Crim. P. 26.2 and 18 U.S.C. § 3500, the government will produce summaries of witness interviews prepared by law

enforcement. The government respectfully requests that the Court preclude the defense from introducing the contents of these reports to impeach such witnesses during cross-examination, publishing the contents of the reports to the jury, or otherwise suggesting to the jury that the reports are statements of the witnesses who did not write or adopt them.

A party may impeach a witness with a prior inconsistent statement of that witness, but the statement must be the witness's own statement that the witness either made or adopted. See Fed. R. Evid. 613; United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992) (concluding that the trial court did not err in refusing to admit prosecutor's notes taken during debriefing of witness and explaining that a "third party's characterization" of a witness's statement does not constitute a prior statement of that witness "unless the witness has subscribed to that characterization"); United States v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]," it was "properly rejected as a prior inconsistent statement"). The problem with using a third party's summary or characterization of the witness's statement to impeach is "one of relevancy": "If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible." Almonte, 956 F.2d at 29.

The Jencks Act governs the discoverability of a witness's prior statements, and its definition of "statement" accords with Fed. R. Evid. 613(a) and applicable case law on proper impeachment using prior inconsistent statements. Under the Jencks Act, a statement means "a written statement made by said witness and signed or otherwise adopted or approved by him," a recording or transcription that "is substantially [a] verbatim recital of an oral statement made by said witness and recorded contemporaneously," or a statement made by a witness to the grand

jury.  See 18 U.S.C. § 3500(e).  Because the Jencks Act is meant to restrict the defendant's use of discoverable statements for impeachment, "only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment." Palermo v. United States, 360 U.S. 343, 349, 352 (1959).  An "agent's interpretations and impressions" of a witness do not fall within the purview of the Jencks Act.  Id. at 352-53.

In this case, the government intends to produce to the defendant reports summarizing investigators' interviews with government witnesses pursuant to 18 U.S.C. § 3500. These reports were not reviewed or adopted by any of the government witnesses.  Moreover, they were finished after interviews were completed and reflect the thought processes and interpretations of the agents and officers; they do not constitute verbatim recitals or transcripts of any of the witnesses' statements.[13]  As a result, the statements in these reports are not statements of any of the government's witnesses (other than the reports' authors, if called to testify at trial), cannot be used for impeachment, and should not be read aloud or shown to the jury.  See Almonte, 956 F.2d at 28; Leonardi, 623 F.2d at 757.  The Court should therefore preclude any use or suggestion by defense counsel that a statement in a law enforcement summary report is a statement of the witness being interviewed.[14]

---

[13]     These reports would, however, constitute prior statements of the agents or officers who prepared the report if they are called as a witness to testify regarding the subject matter contained in the report.

[14]     The government acknowledges that the defense may ask a witness whether he or she made a statement that is reflected in a law enforcement report.  However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the report's contents as a prior inconsistent statement.  Additionally, if a witness says that he or she does not remember a fact, the defense may attempt to refresh a witness's recollection by showing the witness the report, but only if the defense does so in a manner that does not imply that the report is the witness's own statement or publish its contents to the jury.

X.     The Defendant Must Disclose Rule 16(b) Discovery and Trial Exhibits To Be Introduced During Her Case-in-Chief

The government respectfully requests that the Court order the defendant to disclose defense exhibits, including exhibits she intends to introduce through cross-examination of government witnesses, no later than one week before jury selection (i.e., May 12, 2025).

Federal Rule of Criminal Procedure 16(b) governs a defendant's disclosures in a criminal case. In relevant part, it requires the defendant to provide the government with documents and records that the defendant "intends to use . . . in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). The Rule's purpose "is to avoid surprise and gamesmanship" and "it definitely contemplates reciprocity in the production of evidence that both parties intend to introduce in their case-in-chief at trial." United States v. Hsia, No. 98-CR-57 (PLF), 2000 WL 195067, at *1 (D.D.C. Jan. 21, 2000).

Of course, Rule 16 does not require a defendant to disclose documents she intends to use for purposes of impeaching a government witness (just as Rule 16 does not require the government to disclose documents it intends to use to impeach defense witnesses). But to the extent that a defendant seeks to admit into evidence a document while cross-examining a witness during the government's case-in-chief in order to affirmatively support the defendant's theory of the case, such a document falls within the ambit of Rule 16 and must be produced. As the District Court for the District of Columbia has explained:

> A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense." Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may be used to support her defense . . . . The cross-examination of these

> and other government witnesses therefore is properly seen as part
> of defendant's case-in-chief if it buttresses her theory of the case.

Id. at *2 (quoting Black's Law Dictionary 207 (7th ed. 1999)). The Hsia court distinguished documents introduced by a defendant via a government witness — which do fall within Rule 16 and should be disclosed — from documents used by a defendant "merely to impeach a government witness, and not as affirmative evidence in furtherance of [the defendant's] theory of the case, [which] is not part of [the defendant's] case-in-chief." Id. at *2 n.1.

Courts in this district have repeatedly recognized this distinction, ordering the production of defense exhibits "that will not be used solely for impeachment purposes," even if the defense intends to introduce such exhibits during cross-examination. United States v. Smothers, No. 20-CR-213 (KAM), 2023 WL 348870, at *22 (E.D.N.Y. Jan. 20, 2023); see also United States v. Warren, No. 22-CR-231 (DLI), ECF Order (E.D.N.Y. Sept. 6, 2023) (ordering disclosure of defense exhibits in felon-in-possession trial six days prior to jury selection); United States v. Thorpe, No. 19-CR-492 (HG), Pretrial Conference Tr. 41 (E.D.N.Y. Aug. 23, 2023) (granting government's motion for disclosure of Rule 16 discovery and defense exhibits two weeks before trial, explaining, "It's not only exhibits that you would introduce if you called a witness, but it's exhibits that you know you're going to introduce through, let's say, the case agent. . . . It's not only what you're going to put on once the Government says, 'the Government rests.'"); United States v. Napout, No. 15-CR-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) (holding that "Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant."). That obligation extends to material produced by the government in discovery that the defense intends to use as an exhibit.

See <u>Smothers</u>, 2023 WL 348870, at *22 (requiring advance production of defense exhibits "regardless of whether such an exhibit is in the defense's sole custody").[15]

Here, the government first requested the defendant's Rule 16 materials with its discovery letter on March 6, 2025; to date, the defendant has not disclosed any document she intends to introduce at trial. The defendant's failure to provide reciprocal discovery may be a result of having none to produce; she may not intend to introduce any evidence at trial, as is her right. The defendant, however, cannot rely upon an undefined defense strategy to avoid producing documents in compliance with the spirit and letter of Rule 16. Accordingly, to avoid gamesmanship, unfair surprise and undue delay during the trial, the government respectfully requests that the Court order the defendant to identify any defense exhibits she intends to introduce during the government's case (<u>i.e.</u>, not those documents to be used for impeachment purposes only) or any defense case no later than May 16, 2025, one business day before jury selection.

The government further respectfully submits that, to avoid gamesmanship and delay during the trial, the Court should set a schedule for disclosure of the statements of any defense witnesses other than the defendant herself. <u>See</u> Fed. R. Crim. P. 26.2. The government

---

[15]    Numerous other district courts outside of this District have interpreted Rule 16(b) similarly. <u>See</u> <u>United States v. Swenson</u>, 298 F.R.D. 474, 477 (D. Idaho 2014) ("Defendants have a duty to produce any exhibits they intend to use at trial during cross-examination of a government witness other than for impeachment purposes."); <u>United States v. Holden</u>, No. 13-CR-444 (AJB), 2015 WL 1514569, at *4 (D. Or. Mar 19, 2015) (holding, based on <u>Swenson</u> and <u>Hsia</u>, that a defendant must disclose non-impeachment substantive evidence that the defendant seeks to use in examination of government or defense witnesses); <u>United States v. Larkin</u>, No. 12-CR-319 (GWF), 2015 WL 4415506, at *5 (D. Nev. July 20, 2015) (stating that the approach adopted in <u>Holden</u>, <u>Swenson</u>, and <u>Hsia</u> is "consistent with the structure and integrity of Rule 16(b) as a whole"); <u>United States v. Aiyaswamy</u>, No. 15-CR-568 (LHK), 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017) (same).

proposes that the Court order that government and defense Rule 26.2 material be exchanged simultaneously on a date agreed-upon by the parties or, if necessary, set by the Court.  See United States v. Boustani, No. 18-CR-681 (WFK), ECF No. 120 at 1-2 (E.D.N.Y. July 31, 2019) (ordering simultaneous exchange of Rule 26.2 material).

Finally, to avoid any unnecessary objections or delays during opening statements, the government respectfully requests that the Court order that the parties mutually exchange any demonstratives each party intends to use during opening statements no later than May 16, 2025. See United States v. Aguilar, No. 20-CR-390 (ENV), ECF No. 238 at 1-2 (E.D.N.Y. Jan. 2, 2024) (ordering exchange of opening-statement demonstratives after completion of jury selection).  The government respectfully submits that such demonstratives should not include any exhibits, as exhibits generally may not be shown to the jury during opening statements. See id. at 1 ("Aguilar may not during his opening statement show or reference by exhibit number exhibits marked for use at trial."); Williams v. Vahey, No. 20-CV-2560 (KAM), 2023 WL 130834, at *1 (E.D.N.Y. Jan. 8, 2023).

## REQUEST FOR SEALING

The government respectfully requests that this memorandum of law be filed under seal, with a redacted version filed publicly. The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal.  See, e.g., United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008) (noting "the requirement that district courts avoid sealing judicial documents in their entirety unless necessary"); Lugosch v. Pyramid Co., 435 F.3d 110, 119-20 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored").  However, redactions over the portions of this memorandum that concern the defendant's medical history are necessary to protect her confidential medical information from being made public. See, e.g.,

<u>Offor v. Mercy Med. Ctr.</u>, 167 F. Supp. 3d 414, 445 (E.D.N.Y. 2016) ("Courts in this Circuit have repeatedly held that information protected by HIPAA is not subject to a First Amendment or common-law right of access and thus have sealed docket entries and redacted documents that contain such information."), <u>vacated in part on other grounds</u>, 676 F. App'x 51 (2d Cir. 2017). Moreover, as this memorandum of law "is not directly related to the ultimate adjudication of in this case, the weight of the presumption of access is not particularly high." <u>United States v. Hernandez</u>, No. 3:23-MJ-655, 2024 WL 707015, at *4 (D. Conn. Feb. 21, 2024) (citing <u>Lugosch</u>, 435 F.3d at 119). Accordingly, the defendant's privacy interest in keeping confidential the personal medical information contained within this memorandum of law outweighs the public's qualified right of access under the common law and First Amendment.

Because the facts set forth here provide a sufficient basis for the "specific, on the record findings" necessary to support sealing, <u>Lugosch</u>, 435 F.3d at 120, the government respectfully requests that the Court permit the filing of this memorandum of law under seal.

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the government's motions <u>in limine</u>.

Dated:      Brooklyn, New York
            May 5, 2025

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By:    /s/
      Brooke Theodora
      Assistant U.S. Attorney
      (718) 254-6342