**Federal Defenders**
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director*

Michelle A. Gelernt
*Attorney-in-Charge*

May 12, 2025

**By ECF**

The Honorable Ann M. Donnelly
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn New York 11201

**RE**: **United States v. Svetlana Dali, 25 CR 14 (AMD)**

Dear Judge Donnelly:

    Through counsel, Svetlana Dali submits this response in opposition to the government's motions *in limine*. (Dkt. No. 20). I address the government's requests in order.

### I.    Response to government's motion to admit evidence of uncharged crimes

    The government seeks to admit evidence that Ms. Dali twice evaded airport security in the ten months prior to the conduct charged in the indictment. Specifically, the government seeks to introduce evident that, in February of 2024, Ms. Dali was found in a secure zone at Miami International Airport without permission. (Dkt. No. 20 at 3-4). The government alleges that Ms. Dali was detained, fingerprinted, and then released following this incident. *Id.* at 4. The government also asks to introduce evidence that, two days prior to the offense conduct, Ms. Dali entered a secure area at Bradley International Airport in Hartford, Connecticut without permission. *Id*. at 4-5.

    The government advances two justifications for the introduction of the proffered evidence. First, the government argues that the two prior uncharged acts of trespass are direct evidence of the charged offense and "inextricably intertwined with the evidence regarding the charged offense." *Id*. at 6-10. Second, the government argues that the proffered evidence is admissible under Fed. R. Evid. 404(b) to show that Ms. Dali's conduct was not an "accident or mistake."

    While not agreeing that either of the government's arguments is persuasive, Ms. Dali does not object to the proffered evidence. Ms. Dali will request that the Court provide an appropriate limiting instruction both at the time the evidence comes before the jury and in the final jury instructions. "As the Supreme Court has frequently observed, the law recognizes a strong presumption that juries follow limiting instructions." *United States v. Snype*, 441 F.3d

119, 129 (2d Cir. 2006) *see also Zafiro v. United States*, 506 U.S. 534 (1993) ("[J]uries are presumed to follow their instructions." (quoting *Richardson v. Marsh*, 481 U.S. 200, 211 (1987))); *Spencer v. Texas*, 385 U.S. 554, 562 (1967) ("[T]he jury is expected to follow instructions in limiting ... evidence to its proper function*."); accord United States v. Stewart*, 433 F.3d 273, 307 (2d Cir.2006) (noting the "well-settled proposition" that jurors are presumed to follow limiting instructions).

## II. Response to government's motion to preclude evidence about Ms. Dali's belief that she was being poisoned

Several times after boarding the Delta flight at JFK Airport, Ms. Dali informed airline employees and law enforcement agents that she was being poisoned in the United States.[1] For example, while still on the airplane in Paris, Ms. Dali told a flight attendant that she was "seeking asylum, and that the US government was poisoning her." After arriving in Paris, United States Customs officials interviewed Ms. Dali. She told them that "she was diagnosed with cancer due to Polonium poisoning by Russian and American actors and is unable to get proper treatment in the United States."

After her arrest on December 4, 2024, Ms. Dali waived her rights to remain silent and to consult an attorney and voluntarily answered questions posed by an FBI agent for two hours. This interrogation session was recorded and only terminated after the agent ran out of questions to ask. During this interview, the agent asked Ms. Dali why she went to France. In sum and substance, Ms. Dali said that, though France is the "worst country," she "had to leave this country (the United States)" because police refused to protect her from people who were poisoning her. She also said that she once hoped that police could protect her in this country, but they just laughed in her face as she vomited blood. Later during this interview, Ms. Dali identified phosphates and polonium as the chemicals that had been used to poison her.

The government argues that Ms. Dali's belief that she was being poisoned is not relevant under Fed. R. Evid. 401 and 402.[2] (Dkt. No. 20 at 10-14). The government is wrong. As noted in its own request to adduce evidence of uncharged acts, evidence that provides necessary background and "completes the story of the crime charged in the indictment" is always relevant. *Id.* at 9. Here, Ms. Dali's belief that she was being poisoned (a belief that that the government apparently accepts as honestly held by Ms. Dali) is relevant to show "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988) *see also United States v. Williams*, 585 F.3d 703, 707 (2d Cir. 2009) ("[E]vidence is often admissible 'to provide background for the events alleged in the indictment' or 'to enable the jury to understand the complete story of the crimes charged.'").

Here, the government seeks to hide obviously relevant evidence from the jury, complaining that the evidence would "invite the jury to nullify" rather than follow the Court's

---

[1] The factual bases for the following statements come from discovery received from the government, the government's prior written submissions in this case, and discussions with Ms. Dali.

[2] At trial, Ms. Dali does not intend to introduce evidence, through an expert witness or otherwise, that she suffers from any mental illness.

instructions. (Dkt. No. 20 at 11). This is the government seeking to have its cake, eat it too, and then ask the Court to bake it another. As noted above, courts have long relied on the strong presumption that juries follow limiting instructions. The government acknowledges this truth in its own application to introduce evidence of uncharged acts. *Id*. at 7. This strong presumption that juries can follow instructions applies equally to evidence that Ms. Dali believed she was being poisoned. The government is free to request an appropriate limiting instruction regarding this evidence if it believes one is necessary.

"There is no gainsaying that arriving at the truth is a fundamental goal of our legal system." *United States v. Havens*, 446 U.S. 620, 626 (1980). Granting the government's request to conceal clearly relevant evidence from the jury would frustrate that "fundamental goal." Granting the government's request would also likely result in a strong urge by jurors to engage in speculation as to the reasons for Ms. Dali's conduct. The government provides no good reason why it would be less prejudicial to risk this inevitable speculation by the jury rather than trust the same jury to follow the Court's instructions regarding the appropriate evaluation of evidence—whether it be evidence of uncharged crimes or something entirely less prejudicial.

Because Ms. Dali's (uncontested) belief that she was being poisoned is relevant as background and to allow the jury to understand the complete story of the incident, it would be error to preclude evidence of her belief.

### III.     Response to government's motion to preclude evidence or argument that attempts to shift blame to the government, TSA or Delta Airlines

The government has moved to preclude evidence of the egregious security failures on the part of both TSA and Delta Airlines that allowed an unticketed passenger to not only board an international flight, but to remain undetected until shortly before touchdown. (Dkt. No. 20 at 16-18). The Court should deny this request.

Such evidence would not be admitted in furtherance of an "improper victim blaming defense." *Id.* at 17. As the government acknowledges, lack of consent is an element of the crime, and the defense believes that the government must also prove that Ms. Dali was aware that she lacked the airline's consent to board the flight. The procedures used by both TSA and Delta to ensure only ticketed passengers access flights, as well as the failure of those processes in this case, is clearly relevant to Ms. Dali's knowledge that the airline had not consented to her boarding the flight.

Further, the evidence of the security (or lack thereof) that allowed Ms. Dali to board the plane is relevant simply as background and to complete the narrative of the incident—exactly like the other act evidence proffered by the government and the evidence of Ms. Dali's belief that she was being poisoned in the United States.

IV. **Response to government's motion to admit Ms. Dali's post-arrest statements, made to an FBI agent, and to preclude Ms. Dali from introducing statements made to the same agent**

Ms. Dali does not object to the government introducing into evidence any portion of her recorded, two-hour post-arrest interrogation under Fed. R. Evid. 801(d)(2)(A).

The Court should allow Ms. Dali to introduce into evidence a short (approximately two minute) portion of her post arrest statement—the portion where she answers the agent's question about why she went to France.[3] The government argues that these statements should be precluded because they are hearsay. (Dkt. No. 20 at 18-21). Again, the government is wrong.

Hearsay is a statement, offered by a party "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. In offering the portion of Ms. Dali's statement noted above, the defense does not seek to prove either that France is the worst country or that Ms. Dali was being poisoned. Indeed, the government itself acknowledges that Ms. Dali had an "*unfounded* belief that she has been poisoned by various governmental authorities." (Dkt. No. 20 at 11) (emphasis added). The defense is not seeking to prove Ms. Dali's beliefs were true. Instead, the proffered statements are relevant to show both Ms. Dali's state of mind when she boarded the plane and her consciousness of innocence in voluntarily and truthfully answering the agent's questions. *See, e.g. United States v. Biaggi*, 909 F.2d 662, 691 (2d Cir. 1990) ("[E]vidence of an innocent state of mind" may be admissible at trial.)

The proffered statements are not offered to prove the truth of the matters asserted and thus are not hearsay. The Court should allow them to be admitted into evidence at trial.

V. **Response to the government motion to preclude any evidence designed to elicit sympathy**

Ms. Dali acknowledges that sympathy is not a basis on which a jury should base its verdict. Thus, the defense will object when the government attempts to elicit from its witnesses that they were "[a]larmed" when they discovered Ms. Dali on the plane shortly before landing or that they were "[s]cared that [Ms. Dali] might be dangerous." (Dkt. No. 20 at 3). Such statements, clearly intended to appeal to the jurors' emotion, are inappropriate and should be precluded. Since the Court will surely instruct the jury that sympathy is not a proper, no other ruling is necessary at this time.

VI. **Response to government's motion to preclude evidence about Ms. Dali's lack of a criminal record**

As the government acknowledges, Ms. Dali's lack of any prior criminal is relevant to her credibility should she choose to testify. (Dkt. No. 20 at 22-23). Presently, Ms. Dali would not seek to establish her lack of prior criminal history on her direct case. However, the government intends to introduce evidence that Ms. Dali was detained and fingerprinted by law enforcement

---

[3] As noted above, Ms. Dali's answer, in sum and substance, was that, though France was the worst country, she had to leave the United States because police here refused to protect her from being poisoned. The statements Ms. Dali seeks to admit begin at about 55:00 on the video recording of the interrogation.

at Miami International Airport in February of 2024 and then released without charges. The purpose of fingerprinting Ms. Dali was to determine if she had a criminal record. Presumably, the agents who detained her learned that she did not. This fact is relevant to complete the narrative of the Miami incident and Ms. Dali should be able to ask questions to establish it.[4]

### VII. Response to the government's motion to preclude evidence or argument on the government's charging decision

Ms. Dali does not intend to introduce evidence or comment on the government' decision to indict and pursue the instant charge. However, as the government is aware, both "[t]he prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence." *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998) *citing United States v. Myerson,* 18 F.3d 153, 163 (2d Cir.1994).

The government will certainly argue to the jury that the charge is "serious." It previews this intent in its motion, by noting the "alarm" that the discovery of Ms. Dali on the plane caused; enough alarm to "scare" the flight crew. (Dkt. No. 20 at 3). It is fair comment, and well within the "wide latitude" given to criminal defendants for Ms. Dali to comment that the charged crime is the federal version of the New York crime of theft of services. *Compare* 18 U.S.C. § 2199 *with* NY PENAL § 165.15(3) (A person is guilty of theft of services when . . . [w]ith intent to obtain . . . air . . . service without payment of the lawful charge therefor, or to avoid payment of the lawful charge for such transportation service which has been rendered to him, he obtains . . . such service or avoids or attempts to avoid payment therefor by force, intimidation, stealth, deception or mechanical tampering.")

### VIII. Response to the government's request to preclude evidence or argument concerning possible punishment or collateral consequences of a guilty verdict

Ms. Dali does not intend to present evidence or argument concerning the possible sentence or consequences of a guilty verdict.

### IX. The government's motion to preclude the "improper use of agent reports" to impeach witnesses

Ms. Dali's counsel is aware of Fed. R. Evid. 613 and will appropriately question the government's witnesses about any prior inconsistent statements revealed by their trial testimony. The defense will inform the Court if it chooses to introduce extrinsic evidence of a prior inconsistent statement pursuant to Fed. R. Evid 613(b), to include the questioning of any law enforcement agent who memorialized the prior inconsistent statement.

---

[4] Indeed, it would be unusual for the government to elide the fact that law enforcement checked Ms. Dali's criminal history before releasing her without charges. Such a choice would leave the jury with the false impression that federal agents are in the catch-and-release business—even for those who have been convicted of similar crimes in the past.

X.  **The government's motion for disclosure of discovery pursuant to Fed. R. Crim. P. 16(b) and of trial exhibits.**

Ms. Dali has complied with her discovery requirements under Fed. R. Crim. P. 16 and will comply with the requirements of Fed. R. Crim. P. 26.2. The defense will disclose to the government before trial any marked defense exhibits. As the government notes, Ms. Dali is not required to, and will not, disclose any material that will be used for impeachment. The defense anticipates that any defense exhibit will have been provided by the government as discovery and is already in the government's possession.

XI.  **Conclusion**

For the reasons stated, and for any other the Court deems just and proper, we ask that the Court grant the relief requested herein.

Respectfully submitted,

/s/
Michael Schneider
Federal Defenders of New York, Inc.
*Counsel for Svetlana Dali*


cc:   Clerk of the Court (by ECF)
      AUSA Brooke Theodora (by ECF and email)