

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EDP:BET
F. #2024R00934

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 13, 2025

<u>By E-Mail and ECF</u>

The Honorable Ann M. Donnelly
United States District Judge
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Svetlana Dali
                 Criminal Docket No. 25-14 (AMD)

Dear Judge Donnelly:

        The government respectfully submits this letter in reply to the defendant Svetlana Dali's opposition to our motions <u>in limine</u>. <u>See</u> ECF No. 20[1] (government's motions <u>in limine</u>) ("Mot."); ECF No. 24 (defendant's opposition) ("Opp."). For the following reasons, the defendant's arguments in opposition to our motions are without merit.

    I.    <u>The Court Should Preclude Evidence of the Defendant's Purported Belief that She Was Poisoned</u>

        The defendant first argues that she should be able to introduce evidence of her apparent belief that she was poisoned because it "completes the story" of the charged crime, pointing to the fact that the government has moved to admit evidence of uncharged conduct under similar reasoning. This argument fails for several reasons.[2]

---

[1]     An unredacted version of the government's motions <u>in limine</u> is available at ECF no. 21.

[2]     In her brief, the defendant claims that the government has "accept[ed]" that the defendant "honestly believes" she has been poisoned. Opp. at 2. That is not true, and the government has never represented as much to the defendant. To the contrary, the government is aware of several pieces of evidence that undercut the defendant's claim that she honestly believed she was poisoned and in imminent danger in the United States, including, for example, her calm and collected demeanor during her post-arrest interview once she was returned to the United States (during which there are several points in which the defendant laughs and makes light of the charged conduct), as well as evidence that defendant recently chose to reenter the United States from France by stowing away on an Air France flight in February 2024, which is

As an initial matter, the defendant is plainly wrong that she should be able to admit this evidence because it "completes the story" of the charged crime. Although the defendant claims that "evidence that completes the story of the crime charged in the indictment is always relevant," this is clearly incorrect. See Opp. at 2 (quotations omitted). Rather, to admit such evidence under Federal Rules of Evidence 401 and 402, the proponent must at a minimum show that it tends—either directly or indirectly—to make any fact of consequence in the action more or less probable than it would be without the evidence. See Fed. R. Evid. 401; United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997) ("Relevant evidence is not confined to that which directly establishes an element of the crime." (emphasis added)). The defendant attempts to do this by arguing that she intends to admit evidence of her apparent poisoning belief to "furnish an explanation of the understanding or intent with which certain acts were performed." Opp. at 2 (quotations and citations omitted). But, beyond these conclusory statements, the defendant provides no explanation as to why this is the case. With respect to intent, 18 U.S.C. § 2199 requires only that the defendant acted deliberately and purposefully when she boarded the plane without consent—i.e., that she performed those acts consciously and objectively rather than by mistake or accident—and that while so acting she also had the specific intent to obtain transportation. Unlike the government's proffered evidence of uncharged conduct,[3] evidence offered by the defendant that she believed she was being poisoned plainly has no bearing as to whether her actions were deliberate, purposeful, and/or performed with the specific intent to obtain transportation. Instead, such evidence tends to show that the defendant purportedly believed her actions in stowing away on Flight 264 were justified and/or performed in good faith, which is undeniably irrelevant to the elements of Section 2199.[4]

Accordingly, the government is not "hid[ing]" relevant evidence, Opp. at 2—it is seeking to prevent the defendant from offering improper evidence where it is clear that her only purpose in offering such evidence is to confuse and mislead the jury about the issues, invite nullification, and revive defenses clearly prohibited by the Insanity Defense Reform Act ("IDRA"), especially in light of the fact that the defendant has not chosen to present an insanity defense. This is plainly inadmissible under both the IDRA and Federal Rule of Evidence 403 for the reasons described in the government's opening brief. See Mot. at 10-15. Indeed, the

---

described in more detail in footnote 5 and in the government's motions in limine. See Mot. at 4, n. 6.

[3] As the government explained in its opening brief, evidence of the defendant's prior efforts to evade airport security in the lead-up to the charged conduct is admissible as direct evidence because it shows that the defendant's actions at JFK were methodically planned based on her past experience—i.e., that they were deliberate and purposeful, and not the result of accident or mistake. Mot. at 9.

[4] There is actually an argument that, if offered by the government, evidence that the defendant believed she was being poisoned in the United States makes it more likely that she specifically intended to obtain transportation when she deliberately boarded a flight to Europe without consent. This underscores that the defendant's true purpose for offering this evidence is to confuse and mislead the jury on the issue of intent, and to invite nullification, as described below.

defendant's recent submissions imply that she may attempt to improperly use evidence of her apparent belief that she was poisoned to mislead the jury into believing that her conduct in boarding Flight 264 without consent was somehow not "voluntary." See, e.g., ECF No. 26 (Joint Proposed Jury Instructions), Requests 2B & 3B. This is yet another improper bid to confuse the jury as to what the government is required to prove with respect to intent and to invite them to nullify based on her proffered justification for her conduct. And to the extent the defendant intends to argue—or imply—that her self-professed and unfounded belief that she was poisoned compelled her to commit the charged conduct, this evidence must be precluded as an improper end run around of the IDRA and Federal Rule of Criminal Procedure 12.2 (describing the strict procedures the defendant must follow to present an insanity defense).

Evidence of the defendant's purported poisoning belief is also inadmissible under Rule 403 for the independent reason that it would needlessly waste the jury's time and significantly extend the length of this trial for no appropriate reason. Indeed, allowing the defendant to present such evidence would essentially invite a mini-trial as to the completely irrelevant issues of (i) whether the defendant was in fact poisoned, and, if so, by whom and where, and whether her report about such poisoning was taken seriously (or should have been taken seriously) by law enforcement, (ii) whether the defendant genuinely believed she was poisoned, and (iii) if her belief was genuine, the strength of that belief. To rebut the defendant's evidence on these issues, the government would necessarily seek to admit evidence of the defendant's medical records and history, her whereabouts and travels in the last few years,[5] the status of her asylum claims, whether she told anyone else she was poisoned (or whether she only made this allegation to individuals involved in this case, which tends to show that these statements are an untruthful attempt to absolve her from liability for this crime), whether the case agent and/or any other law enforcement agent ever investigated her claims, and any other circumstantial evidence of the defendant's subjective beliefs. The fact that such a proffered defense would necessarily send both parties down this rabbit hole demonstrates further why the defense needs to be precluded. All of this evidence is plainly irrelevant to the trial of the crime charged in the indictment and clearly should not be the focus of this trial.

Finally, the defendant claims that she will be unfairly prejudiced if she is not allowed to admit evidence of her alleged poisoning belief because it will invite the jury to speculate as to her motives in committing this crime. This argument is frivolous because, as described above, the defendant's motive in committing this crime is irrelevant. What is relevant—and what the government has requested that the Court instruct the jury—is whether she acted deliberately and intentionally with the specific intent to obtain transportation, which will be made abundantly clear through the government's evidence at trial.

---

[5] For example, as described in the government's opening brief, there is evidence that despite the defendant's self-professed belief that she has been poisoned in this country, she chose to return to the United States from France in February 2024 by stowing away on an Air France flight. This trial should not be focused on, among other things, the parties proving why the defendant flew illegally to the United States if she thought she was at risk of being poisoned.

Accordingly, the Court should preclude all evidence concerning the defendant's apparent belief that she was poisoned.

II. The Court Should Preclude Evidence That Attempts to Blame the Defendant's Crime on TSA, Delta, and/or Other Government Officials

The defendant next argues that she should be able to offer evidence of the purported "egregious security failures" of both the Transportation Security Administration ("TSA") and Delta Air Lines in preventing "an unticked passenger to not only board an international flight, but to remain undetected until touchdown." Opp. at 3. This argument fails for the sole reason that this evidence is plainly improper under Rule 403 for the reasons described in the government's opening brief.

Moreover, the defendant's explanation as to why she should be able to admit this evidence is further proof that her primary aim at this trial will be to improperly confuse and mislead the jury and invite nullification. Indeed, in the first two sentences of her argument in this portion of her opposition, the defendant concedes that she committed essentially all of the elements of this crime—i.e., that she not only did not have a boarding pass for Flight 264, but that she was on the flight and remained on it when it departed from JFK. Opp. at 3. These concessions strongly suggest that her strategy at trial will instead be to admit plainly improper evidence (e.g., evidence that Delta somehow consented to the defendant flying on one of its planes without buying a ticket or having her identity verified by TSA) in an attempt to inappropriately discount the overwhelming evidence of her guilt.

III. The Court Should Preclude Evidence of the Defendant's Own Self-Serving Statements

Finally, the defendant should be precluded from offering the two-minute clip of her own self-serving statements that she describes in her opposition, in which she explains her purported reasoning for going to France. As offered by the defendant, this evidence is plainly inadmissible hearsay for which the defendant has not identified any applicable hearsay exception or non-hearsay purpose to support its admission. Instead, the defendant's clear purpose in offering this evidence would be to prove the truth of her statements—i.e., that she went to France because she apparently believed she was being poisoned here in the United States. The defendant's argument that this statement is purportedly being offered for the non-hearsay purpose of showing her allegedly innocent state of mind is frivolous. The defendant's post-arrest interview took place over a week after the crime, so any statements that she made at that interview—during which she had a substantial incentive to lie to justify her criminal conduct— are hardly relevant to her state of mind at the time of the crime.

IV.    Conclusion

        Accordingly, the defendant's arguments in opposition to the government's motions in limine are without merit.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:          /s/
        Brooke Theodora
        Assistant U.S. Attorney
        (718) 254-6342