**Federal Defenders**
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

*Tamara L. Giwa*
Executive Director

*Michelle A. Gelernt*
Attorney-in-Charge

June 20, 2025

**By ECF**

Hon. Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: United States v. Svetlana Dali, 25 CR 14 (AMD)**

Your Honor:

I write in response to the Court's order of June 13, 2025, directing me to respond to Ms. Dali's letter to the Court (Dkt. No. 48) and state my position on whether the Court should appoint new counsel.

  **I. Assault and injury on May 20, 2025**

On the morning of May 21, 2025, during trial of this matter, Ms. Dali appeared in court with obvious injuries. The most serious apparent injury was a swollen and discolored hand. When I met Ms. Dali that morning in the courtroom, she reported that she had been assaulted by MDC staff. I immediately informed the Court of what happened to Ms. Dali (Trial T. at 277-28). Later that day, before Ms. Dali was returned to the MDC, a staff member of the Federal Defenders communicated to the legal department at MDC by email that Ms. Dali had been assaulted by a guard and asked that she receive medical attention for her head (which was slammed to the ground during the incident) and her hand. The next morning (May 22, 2025), a Staff Attorney for the MDC responded: "A review of her medical records shows she was provided medical attention for the concerns you shared below."

In the month since May 22, 2025, I have met with Ms. Dali at the MDC and observed that her left hand, though now in a splint, is still quite swollen and purple. I and my staff have forwarded several email requests to the legal department at MDC requesting that she be seen and treated by a medical professional for her injuries. The most recent of these requests was made on June 18, 2025, after Ms. Dali was brought to the courthouse for her presentence investigation interview. After that interview, a paralegal for the Federal Defenders sent yet another email to the MDC legal department stating: "I saw Ms. Dali this morning, and her hand is extremely swollen and discolored. She also reports that her hand has a concerning smell, and that the swelling is increasing and moving further up her wrist. She also reports concussion-like symptoms, which

include headaches and blurred vision." As of the filing of this letter, I have not received a response to this email message.

### II. Documents seized from Ms. Dali after her arrests

Since her arrest in Buffalo and detention at the MDC, Ms. Dali has consistently asked that I return to her all the documents seized from her by law enforcement after her arrests at JFK airport and in Buffalo. Ms. Dali's documents, which I received from the FBI, fill a banker's box. Thus, I told Ms. Dali that there were too many for her to receive while in the MDC. I also told her that I would provide her with all her documents upon her release. Ms. Dali was unsatisfied with these answers and insisted that I (or my office) review each of the documents and create a list describing them and provide her with that list. I told her that I would not use my office's resources to do that, though at her request, I copied all the medical documents I found among her possessions and sent the copies to her at MDC.

### III. Transcripts of the pretrial conferences

I have ordered the transcripts of the pretrial conferences held before Your Honor and Magistrate Judge Marutollo and will provide copies to Ms. Dali when they arrive. I have provided Ms. Dali copies of all the transcripts related to her case that are in my possession, including the trial transcripts and the transcripts of the initial proceedings and bail hearings held in this matter.

### IV. Russian translation of documents

During my representation of Ms. Dali, she has often asked me to provide written Russian language translations of documents to her. I informed her that the time and expense of providing the requested written translations was too great and that I would not do so. I also informed her that I was willing to meet with her with a translator who could orally translate any document she wished. I also provided her with certain translated documents, including a written Russian language translation of the statute under which she was charged and a written Russian language translation of the final proposed plea agreement provided by the government.

I have met with Ms. Dali many times at the MDC and in the courthouse pens; each time (save one) with a court-certified Russian language interpreter. During each of these meetings I made sure to answer all of Ms. Dali's questions about her case and had the interpreter orally interpret documents at Ms. Dali's request.

### V. Evidence at trial of Ms. Dali's reasons for fleeing the United States

I have discussed with Ms. Dali several times that there was no "agreement" not to present evidence of her "intoxication" or that she was "poisoned" or that she sought asylum and "international protection" in France. (Dkt. No. 48 at 2). Instead, the Court rejected Ms. Dali's *in limine* motion to allow evidence of her sincere belief that she had to leave the United States to save her life. Still, Ms. Dali appears to believe that I somehow agreed to exclude such evidence from trial.

During my pretrial meetings with Ms. Dali, she expressed that among the items I received from the FBI were documents that could prove her innocence. (Dkt. No 48 at 1). I discussed with her that documents that provided the reasons she left the United States would not be allowed into evidence pursuant to the Court's decision on the motions *in limine*. I also discussed with her the challenges the Federal Rule of Evidence would pose to admitting even relevant documents found in her possession.

## VI.     Appointment of new counsel

On May 14, 2025, following the pretrial conference before Your Honor, I met with Ms. Dali in the courthouse pens. At that time, she stated that I was no longer her attorney. I told her that I had been appointed by the Court and only the Court could relieve me. I also told her that I would visit her soon at the MDC to discuss the case and, if she continued to want new counsel, I would inform the Court.

I met with Ms. Dali on May 15, 2025 at the MDC with a Russian language interpreter for more than three hours to discuss the pretrial rulings, jury selection, and the trial in general. During this meeting, Ms. Dali did not reiterate her wish to have new counsel appointed. She appeared to understand that trial would begin on May 20, 2025 and that I would represent her.

I again met briefly with Ms. Dali on May 16, 2025 at the MDC, this time without an interpreter. I wanted to tell Ms. Dali that jury selection would begin on May 21, 2025 before your honor and not on May 20, 2025. However, Ms. Dali would not agree to be strip searched and MDC staff would not allow her to meet with me. I was only able to speak to her for a few seconds before MDC staff took her from the visiting room, but I was able to communicate that the trial would begin on the 21st and not the 20th.

During the trial of this case, from May 21 through May 23, 2025, I met each day with Ms. Dali in the pens behind the courtroom and, on some days, in the marshals' pens in the courthouse basement. She did not request new counsel during these meetings.

Though I would have informed the Court had Ms. Dali persisted in her request for new counsel prior to trial, I would not have joined in her request. The appointment of new counsel would have resulted in a delay of the trial while Ms. Dali would continue to be detained in poor conditions at MDC Brooklyn. Thus, replacing counsel was not in her interest.

For the same reason, I do not join in the request for new counsel contained in her letter to the Court. Substituting counsel now would only delay her sentencing and likely result in detention for longer than warranted by her conduct.[1] Additionally, Ms. Dali continues to speak with me about her case. Though she is disappointed with the outcome of the trial and her treatment at MDC and blames me for these circumstances, there is not a "conflict of interest, a complete breakdown of communication or an irreconcilable conflict" that warrants substitution of counsel. *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981).

---

[1] It is unclear to me whether Ms. Dali currently wishes to have new counsel appointed. I have met with Ms. Dali several times since the end of the trial. On one occasion, after meeting for more than three hours, she asked that new counsel be appointed, but during subsequent meetings she did not restate her request.

Thank you for your attention to this matter.

                                               Respectfully,

                                               /s/

                                             Michael K. Schneider
                                           Assistant Federal Defender
                                           (718) 330-1160

cc:     Clerk of the Court [by ECF]
         Counsel of Record [ECF]